**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW MEXICO**

COWBOYS FOR TRUMP, LLC,
KARYN K GRIFFIN, former LLC
member of Cowboys for Trump and
in her individual capacity, COUY
GRIFFIN as an LLC Member
and in his individual capacity,

        Plaintiffs,

v.                                Case No.

MAGGIE TOLOUSE OLIVER, in
her official capacity as Secretary of
State of New Mexico,

        Defendant.

**PLAINTIFFS' ORIGINAL COMPLAINT FOR CIVIL RIGHTS
VIOLATIONS SEEKING RELIEF TO INCLUDE DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiffs, by and through their attorneys of record, allege and complain of the following:

**INTRODUCTION**

1. This is a civil rights action seeking declaratory and injunctive relief to vindicate right of freedom of speech and association to organize and vocally support the former President of the United States, Donald J. Trump, and his agenda.

2. The First Amendment elevates political speech above all other forms of individual expression by prohibiting laws that regulate it unless the laws are narrowly tailored to serve a compelling state interest.

3. As Justice Kennedy succinctly stated in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339-40 (2010), discriminatory political speech prohibitions run afoul of the First Amendment because:

> Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people. . . The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it. The First Amendment "'has its fullest and most urgent application' to speech uttered during a campaign for political office." (Internal citations omitted). For these reasons, political speech must prevail against laws that would suppress it whether by design or inadvertence.

*Citizens United* at 339.

4. Stretching back to the founding era and The Federalist Papers, the freedom of speech has included the right to engage in anonymous issue advocacy concerning important public issues. *McIntyre v. Ohio Election Commission*, 514 U.S. 334, 342 (1995) ("The freedom to publish anonymously extends beyond the literary realm.").

5. Similarly, the freedom of association includes the right of private individuals to band together for common purposes without government prying into those associations' membership or donor lists. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958).

6. A core insight of the founding era was the necessity of separated powers, wherein each branch of government respected its appropriate role. The founders of the State of New Mexico incorporated this principle into their state constitution. *State ex rel. Taylor v. Johnson,* 1998-NMSC-015, ¶ 20, 125 N.M. 343, 349, 961 P.2d 768, 774 (New Mexico 1998) (interpreting N.M. Const. art. III, § 1 and observing that "the accumulation of too much power within one branch poses a threat to liberty.").

7. Defendant, Secretary of State Maggie Toulouse Oliver ("SOS", "Secretary" or "Oliver"), is responsible for implementing New Mexico's campaign finance regime, including New Mexico Admin. Code 1.10.13 ("the Rule") and New Mexico's Campaign Reporting Act ("CRA"). The Rule and the CRA both require groups that engage in issue advocacy at times

proximate to an election to register with the Secretary of State, disclose their members and contributors, and place a sponsorship disclaimer on their materials.

8.      Plaintiffs engage in educational advocacy in New Mexico and around the country in support of former President Donald J. Trump and his policies. Plaintiffs have not and will not make independent expenditures or financial contributions in support of ballot measures or candidates for state, local, and city elections in the state of New Mexico. If Plaintiffs were to engage in their planned issue advocacy, however, they would be required to register, disclose their donors, and place sponsorship disclaimers on their materials.

9.      In order to protect the privacy of and on behalf of themselves and their donors, Plaintiffs bring this suit under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to protect the core First Amendment rights to free speech and association, as well as to enjoin the enforcement of actions by the Secretary.

10.     In 2019, the Secretary made a final determination that Cowboys for Trump, LLC qualified as a political committee under New Mexico's Campaign Reporting Act. This determination required Cowboys to register as a political committee, pay a registration fee, make disclosures, and to pay a fine for not previously registering.

11.     The Secretary made these determinations despite Tenth Circuit case law prohibiting the SOS from regulating organizations such as Cowboys for Trump. In *New Mexico Youth Organized v. Herrera*, 611 F.3d 669, 670-71 (10th Cir. 2010), the Tenth Circuit considered the New Mexico Secretary of State's appeal of a district court ruling that their attempt to regulate political organizations was unconstitutional.

12.     The Tenth Circuit applied the principles expressed in *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curium), noting that the organizations' purpose was education and empowerment,

and not having "a central organizational purpose that is campaign or election related." *Herrera*, 611 F.3d at 678. It further stated that neither group spent "a preponderance of its expenditures on express advocacy or contributions to candidates." *Id*. The Tenth Circuit thus held that the Secretary of State "cannot constitutionally regulate the organizations." *Id*. at 671.

13. Plaintiffs are the same boat as the plaintiffs in *New Mexico Youth Organized v. Herrera*. Plaintiffs' primary purpose is not to influence elections, and certainly not the state elections over which the Secretary has some authority. The Secretary has never alleged that that Cowboys for Trump has attempted to influence state elections through independent expenditures or any by other means. And the Secretary cannot make such an allegation, as Cowboys for Trump has not expended a single penny on independent expenditures in support of or in opposition to any candidate for office, much less a state office.

## JURISDICTION AND VENUE

14. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to vindicate rights violated under color of state law, and seek relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1988. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Venue properly lies with this Court under 28 U.S.C. § 1391(b).

## PARTIES

15. Plaintiff Cowboys for Trump has accepted contributions from supporters to educate the public in support of former President Trump's agenda, and had planned to continue doing so for the duration of President Trump's time in office.

16. Plaintiff Karen K. Griffin is a resident of the state of Colorado and a former member of Cowboys for Trump, LLC.

17. Plaintiff Couy Griffin is a resident of Otero County and the founding member of Cowboys for Trump.

18. Maggie Toulouse Oliver is the elected Secretary of State of New Mexico. She works in Santa Fe, Santa Fe County, New Mexico. She is sued in her official capacity.

### FACTUAL ALLEGATIONS

19. The Campaign Reporting Act (CRA) requires political committees to register and report their expenditures and contributions. *See* N.M. Stat. Ann. § 1-19-27 (A). The definition of the term "political committee" in the CRA includes "an association that consists of two or more persons whose primary purpose is to make independent expenditures and that has received more than five thousand dollars ($5,000) in contributions or made independent expenditures of more than five thousand dollars ($5,000) in the election cycle." N.M. Stat. Ann. § 1-19-26 (Q)(4).

20. The CRA defines "independent expenditure" to include an expenditure that is "made to pay for an advertisement that . . . refers to a clearly identified candidate or ballot question and is published and disseminated to the relevant electorate in New Mexico within thirty days before the primary election or sixty days before the general election at which the candidate or ballot question is on the ballot." N.M. Stat. Ann. § 1-19-26 (N)(3)(c).

21. Under the CRA, candidate "means an individual who seeks or considers an office in an election covered by the Campaign Reporting Act, including a public official." N.M. Stat. Ann. § 1-19-26 (G). The elections covered by the CRA are "any primary, general or statewide special election in New Mexico and includes county and judicial retention elections but excludes federal, municipal, school board and special district elections." N.M. Stat. Ann. § 1-19-26 (K).

22. The CRA requires that Plaintiffs disclose their members and contributors to the Secretary. Independent expenditures that meet certain dollar thresholds be reported to the

Secretary. *See* N.M. Stat. Ann. § 1-19-27.3(A). The report of these expenditures must include the name and address of the person who made the independent expenditure; the purpose of the expenditure; and "the source of the contributions used to make the independent expenditure." N.M Stat. Ann. § 1-19-27.3(B). There are heightened reporting requirements for independent expenditures over $9,000 in a statewide election which include the name and address of each contributor who contributed "more than two hundred dollars ($200)" in that election cycle. N.M. Stat. Ann. § 1-19-27.3(D)(1).

23. Advertisements concerning matters of public concern – including those not in favor of a specific candidate – must include a disclosure of "the name of the candidate, committee or other person who authorized and paid for the advertisement." N.M. Stat. Ann. § 1-19-26.4(A).

24. Cowboys for Trump was established in 2019 for the purpose of engaging in advocacy within New Mexico in support of policies of President Trump, which included issues such as secure borders, protecting the unborn's right to life, and the Second Amendment's guarantees of the right to bear arms.

25. To support its mission, Cowboys received support from a variety of sources. It raises money from New Mexico donors in support of its mission, its general operations, and its educational efforts.

26. In early 2019, the Secretary began an investigation into the organization after receiving complaints from Cowboys' ideological adversaries.

27. On November 12, 2019, the Secretary informed Cowboys that "soliciting funds for a political purpose without registering as a political committee and reporting contributions and expenditures is a violation of the Campaign Reporting Act."

28. The Secretary explained that the "documentation provided by the complainants and the SOS records establish that your limited liability company, Cowboys for Trump, meets the statutory definition of a 'political committee.'" The Secretary then concluded that the "organization is a political committee as defined under the CRA. As such, your organization 'Cowboys for Trump' is subject to the registration and reporting requirements of the Campaign Reporting Act."

29. Then in a January 15, 2020 letter to Cowboys, the Secretary provided "notice of final action" regarding "Campaign Finance Reports due in April and October 2019." The Secretary stated:

> "The SOS has confirmed that Cowboys for Trump has not registered as a political committee as required pursuant to NMSA 1978, Section 1-19-26.1, nor has Cowboys for Trump filed its 2019 First or Second Biannual Reports, statutorily required under Section 1-19-29 (2019), although the SOS has documents demonstrating Cowboys for Trump was operating as a political action committee prior to March of 2019."

30. In that same January 15, 2020 letter, the Secretary ordered Cowboys to register, file all outstanding finance reports, "and pay the fines owed of $5,000 for the non-filed First Biannual Report and $2,800 as of the date of this letter for the non-filed Second Biannual Report." The fine was to continue to accrue until it was paid.

31. Attorneys for Cowboys responded with a request for arbitration in late January 2020. Arbitrations under the CRA are statutorily limited. An arbitrator cannot provide relief outside the scope of his or her authority. "An arbitrator may impose any penalty the Secretary is authorized to impose." NMSA 1978 Section 1-19-34.4 (F) (1997) (). The only decision an arbitrator is statutorily authorized make is whether any penalty or fine proposed by the SOS is warranted by apply the applying the statutory requirements of the CRA. An arbitrator has no

authority to determine whether the statutory and regulatory scheme that governs campaign reporting is or is not constitutional.

32. A notice of arbitration was signed by Elections Director Mandy Vigil on February 11, 2020. Arbitration took place, and arbitrator Christian C. Doherty decided on July 7, 2020 that "the Secretary of State's Motion for Summary Judgment is GRANTED including all relief sought in said motion." The relief sought by the Secretary, and granted by the arbitrator, is itemized in paragraph 33(a) – (c) below.

33. After that decision, on July 10, 2020, the Secretary informed Cowboys that pursuant to the arbitrator's order, Cowboys must:

a. "register with the Secretary of State (SOS) as a political committee pursuant to NMSA 1978, Section 1-19-27;

b. file all delinquent expenditure and contribution reports with the SOS as required in Sections 1-19-27; 1-19-27;3 and 1-19-29 for the First and Second 2019 Biannual Reports, and all 2020 expenditures and contributions reports as required under NMSA 1978, Section 1-19-29(B); and

c. pay the fines imposed by the SOS for Cowboys for Trump's failure to register and file reports, in the amounts of $7,800 within fifteen (15) days of the arbitrator's decision."

34. In that same letter, the Secretary warned Plaintiffs that failure to comply with the arbitration order would lead to a "referral to the State Ethics Commission for civil enforcement of the fine levied in this matter, pursuant to NMSA 1978, Sections 1-19-34.8 and 10-16G-9(F), and a referral to the New Mexico Attorney General for review of possible violations under NMSA 1978, Section 1-19-36."

35. After arbitration, the Secretary also filed a "Verified Petition and Motion to Confirm an Arbitration Award into a Judgement" in the State's 1st Judicial District Court to convert the arbitration award into a judgment.

36. Plaintiffs have thus been punished for their speech, are forced to pay a registration fee, file reports (including reports of no activity), disclose donor information for engaging t in issue advocacy, have been wrongly fined for educational activities outside the scope of the CRA, and cannot engage in their desired communications as long as these provisions of the CRA are in force. Moreover, as reported on March 19, 2022, "the New Mexico attorney general has filed a misdemeanor charge against Griffin for failing to register a political committee."[1]

## Count 1
### Violation of the First Amendment to the U.S. Constitution
### (42 U.S.C. § 1983: Violation of Plaintiffs' Freedom of Speech)

37. Plaintiffs incorporate the paragraphs 1 through 36 as though fully set forth herein.

38. The First Amendment states "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend XIV. The First Amendment "applies to the States by virtue of the Fourteenth Amendment." *Board of Ed., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 US. 853, 855 n. 1 (1982).

39. Plaintiffs were engaged in speech protected under the First Amendment. Defendant violated Plaintiffs' right to speech by punishing Plaintiffs, through fines, mandatory registration, compelled filing of expenditure and contribution reports, and ultimately criminal charges, for the content of that speech. Defendant's content and viewpoint-based restrictions on Plaintiff's speech

---

[1] Anna Padilla, *'Cowboys for Trump' founder facing charges for failing to register group with state*, KRQE NEWS (Mar. 19, 2022), https://www.krqe.com/news/new-mexico/cowboys-for-trump-founder-facing-charges-for-failing-to-register-group-with-state/.

has caused irreparable harm and is in violation of the Free Speech Clause of the First Amendment, entitling Plaintiffs to declaratory and injunctive relief, as well as damages.

### Count 2
### Violation of the First Amendment to the U.S. Constitution
### 42 U.S.C. § 1983: Retaliation against Plaintiffs' Speech

40. Plaintiffs incorporate the paragraphs 1 through 36 as though fully set forth herein.

41. "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citations and quotations omitted).

42. Plaintiffs were engaged in constitutionally protected activity, as they advocated for issues including secure borders, the rights of the unborn, and the right to bear arms. "The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976), citing *Roth v. United States*, 354 U. S. 476, 484 (1957). Plaintiffs' discussion of these "public issues" is "integral to the operation of the system of government established by our Constitution." *Buckley*, 424 U.S. at 14.

43. Plaintiffs were injured by Defendant's actions, and this action was wholly motivated as a response to Plaintiffs' constitutionally protected conduct. The Secretary fined Plaintiffs $7,800 and demanded Plaintiffs register with their office and file expenditure and contribution reports. Criminal charges have been filed for failure to comply with these unlawful

orders. The punishment levied by Defendant chilled Plaintiffs' speech and would, as a matter of law, likewise chill an ordinary person from speaking out. *See Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir.2004) ("[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective ... a trivial or de minimis injury will not support a retaliatory prosecution claim.")

## Count 3
### Violation of the Fourteenth Amendment to the U.S. Constitution
### 42 U.S.C. § 1983: Fourteenth Amendment Substantive Due Process
### Violation relating to Speech

44. Plaintiffs incorporate the paragraphs 1 through 36 as though fully set forth herein.

45. The Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV, § 1.

46. The substantive component of the Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," and those that are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997) (citations omitted) (cleaned up). It "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

47. "Substantive due process bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quotation omitted). Substantive due process also "limits what the government may do in both its legislative and executive capacities." *Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019).

48. Plaintiffs' fundamental right of speech has been constrained, infringed upon, and harmed by Defendant's actions. Plaintiffs have already been fined by the Secretary. And now Plaintiff Couy Griffin has been charged with a crime based on his speech.

49. Moreover, there is an immediate, credible. and ongoing threat of enforcement of the CRA provisions that requires Plaintiffs to file their statement of organization, including the name, address, and purpose of the organization; the names and addresses of their officers; and their confidential banking information it uses "to receive or make contributions or make expenditures." N.M. Stat. Ann. § 1-19-26.1(C). The Secretary has demanded they file expenditure and contribution reports or else the "fines will continue to accrue." Plaintiffs' right of association – and the freedom to keep that association private – is unlawfully curtailed due to state action. *See Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462 ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.").

## Count 4
### Violations of the First and Fourteenth Amendments to the U.S. Constitution
### 42 U.S.C. § 1983: First and Fourteenth Amendment Violations of the Right of Association

50. Plaintiffs incorporate the paragraphs 1 through 36 as though fully set forth herein.

51. Plaintiffs and their donors have a fundamental right of association. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460, 78 S. Ct. 1163, 1171, 2 L. Ed. 2d 1488 (1958).

52. Plaintiffs and their donors enjoy a right to privacy in their association for free speech about issues. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963). This right to privacy in association for free

speech is protected by the First Amendment as incorporated against the states. *Id*. The Rule and the CRA violate that right by requiring disclosure of donations, ending the privacy of the speech-oriented association.

53. There is an immediate, credible. and ongoing threat of enforcement of the CRA provisions that requires Plaintiffs to file their statement of organization, including the name, address, and purpose of the organization; the names and addresses of their officers; and their confidential banking information it uses "to receive or make contributions or make expenditures." N.M. Stat. Ann. § 1-19-26.1(C). The Secretary has demanded they file expenditure and contribution reports or else the "fines will continue to accrue." Plaintiffs' right of association – and the freedom to keep that association private – is unlawfully curtailed due to state action. *See Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 462 ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.").

54. If Plaintiffs engage in this issue advocacy but fail to register, file the required reports, or include the required disclaimers, their officers will be subject to punishment as a misdemeanor with a $1,000 fine or one year in jail or both. N.M. Stat. Ann. § 1-19-36. Cowboys for Trump, a corporate entity, may also be subject to civil penalties of $1,000 for each violation not to exceed a total of $20,000. N.M. Stat. Ann. § 1-19-34.6(B). They may also be subject to fines up to $5,000 from the Secretary of State's office. 1.10.13.15(E) NMAC. Plaintiffs therefore bring this pre-enforcement challenge on behalf of themselves and their donors to vindicate their First Amendment rights. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) (setting the standard for pre-enforcement challenges). Plaintiffs intend to engage in a course of conduct affected with constitutional interest, namely its issue advocacy.

55. The Rule and the CRA affect direct issue speech, not express advocacy concerning candidates or ballot measures. *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836-37 (7th Cir. 2014) (government does not have "a green light to impose political-committee status on every person or group that makes a communication about a political issue that also refers to a candidate"). The Rule and the CRA are therefore unlawful as applied to Plaintiffs.

56. Plaintiffs and their members and supporters are therefore entitled to an injunction under 42 U.S.C. § 1983 enjoining the continued enforcement of N.M. Stat. Ann. §§ 1-19-27.3(C) and (D)(2) and 1.10.13.11 NMAC as applied to Plaintiffs and other organizations engaged in issue advocacy.

### Count 5
### New Mexico's Campaign Act is Preempted by the Federal Campaign Reporting Act

57. Plaintiffs incorporate the paragraphs 1 through 36 as though fully set forth herein.

58. Federal law preempts state law with respect to election to federal office. 52 U.S.C. § 30143(a). Federal law supersedes "state law concerning the (1) organization and registration of political committees supporting Federal candidate; (2) disclosure of receipts and expenditures by Federal candidates and political committees; and (3) limitation on contributions and expenditures regarding Federal candidates and political committees." 11 CFR § 108.7(b)(1-3).

59. Plaintiffs seek a declaratory judgment under 28 U.S. Code § 2201 that (i) the sections of the Campaign Reporting Act applied to Plaintiffs are preempted by federal law; and (ii) the Campaign Reporting Act is preempted by the Federal Election Campaign Act to the extent the Campaign Reporting Act requires associations of people to register with or disclose receipts and expenditures to the New Mexico Secretary of State.

### PRAYER FOR RELIEF

For these reasons, Plaintiffs respectfully request that this Court:

(a) Declare that the Defendants violated Plaintiffs' rights of freedom of speech and freedom of association guaranteed by the First and Fourteenth Amendments;

(b) Declare that Defendants unlawfully retaliated against Plaintiffs' speech in violation of the First Amendment;

(c) Declare that Defendants violated the Fourteenth Amendment, in that they have unlawfully constrained, infringed upon, and otherwise punished Plaintiffs' exercise of speech and association;

(d) Declare that New Mexico's Campaign Reporting Act is preempted by federal law to the extent that the Campaign Reporting Act requires registration of associations of people who support candidates for federal office;

(e) Enjoin the application of the independent expenditure provisions of 2019 Senate Bill 3 and 1.10.13.11 NMAC as applied to organizations engaged in educational advocacy such as Plaintiffs'; and

(f) Award Plaintiffs nominal damages, their costs and attorneys' fees under 42 U.S.C. § 1988, and any further relief to which Plaintiffs may be entitled.

Dated: March 31, 2022


Respectfully submitted,
BARNETT LAW FIRM, P.A.
*By: /s/ Diego Esquibel*
Diego R. Esquibel
1905 Wyoming Blvd NE
Albuquerque, NM 87112
(505) 275-3200
Diego@theblf.com